UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII



| [JANE DOE], | Civil No. |
| Plaintiff, | 1:15-cv-00085 |
| | (Other Civil Action) |
| vs. | |
| | **MEMORANDUM IN SUPPORT OF MOTION** |
| [DOE UNIVERSITY], | |
| Defendant. | |

## TABLE OF CONTENTS

**Page(s)**

I.    STATEMENT OF FACTS ........................................................................4

II.    STANDARD OF REVIEW ...................................................................10

III.    ARGUMENT ........................................................................................11

    A.    Plaintiff is Likely to Succeed on the Merits. .....................................13

        1.    Title IX Prohibits Retaliation Against Victims of Sexual Violence. ..................................................................................13

        2.    The Fair Housing Act Prohibits Discrimination on the Basis of Sex, Including Evictions On the Basis of Sexual Violence ......................................................................................20

            A.    The Fair Housing Act's prohibition of sex discrimination includes discrimination against survivors of gender-based violence who live in campus housing. .........................................................20

i

B.     The Fair Housing Act's exemption for religious organizations is limited to preferences in religion and does not apply to actions that discriminate on other prohibited grounds...................................................24

C.     Defendant discriminated against plaintiff in violation of the Fair Housing Act by evicting her based on sexual violence. ...............................................26

B.    Absent an Order from this Court, Plaintiff Will Suffer Irreparable Harm. ................................................................30

C.    The Balance of Equities Tips Sharply in Plaintiff's Favor.................32

D.    A Preliminary Injunction Is In The Public Interest. ...........................32

IV.    CONCLUSION ............................................................................34

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Alvera v. Creekside Village Apartments*,
   No. 10-99-0538-8 (U.S. Dep't of Hous. & Urban Dev. Apr. 13,
   2001) ..............................................................................................................27, 34

*Arizona Dream Act Coal. v. Brewer*,
   757 F.3d 1053 (9th Cir. 2014) ..............................................................................37

*Beliveau v. Caras*,
   873 F. Supp. 1393 (C.D. Cal. 1995) ......................................................................28

*Bouley v. Young-Sabourin*,
   394 F. Supp. 2d 675 (D. Vt. 2005) ...................................................................26, 32

*Budnick v. Town of Carefree*,
   518 F.3d 1109 (9th Cir. 2008) ......................................................26, 31, 33, 35

*Cannon v. University of Chicago*,
   441 U.S. 677 (1979).........................................................................................18, 19

*Cureton v. Nat'l Collegiate Athletic Ass'n*,
   198 F.3d 107 (3d Cir. 1999) ..................................................................................18

*Davis v. Monroe Cnty. Bd. of Educ.*,
   526 U.S. 629 (1999).........................................................................................20, 21

*Dickinson v. Zanesville Metro. Hous. Auth.*,
   975 F. Supp. 2d 863 (S.D. Ohio 2013) .........................................................26, 31, 32

*Farris v. Seabrook*,
   677 F.3d 858 (9th Cir. 2012) .............................................................................16, 25

*Franklin v. Gwinnett County Pub. Schools*,
   503 U.S. 60. 71-73 (1992) .....................................................................................18

*Gamble v. City of Escondido*,
   104 F.3d 300 (9th Cir. 1997) ............................................................................33, 34

*Gebser v. Lago Vista Indep. School Dist.*,
    524 U.S. 274 (1989) ................................................................. 19, 20

*Hall v. Meadowood Ltd. P'ship*,
    7 F. Appx. 687 (9th Cir. 2001) ..................................................... 28

*Harris v. Itzhaki*,
    183 F.3d 1043 (9th Cir. 1999) ...................................................... 28

*Herx v. Diocese of Fort Wayne–South Bend, Inc.*,
    No. 1:12-CV-122 RLM, 2014 WL 4373617 (N.D. Ind. Sept. 3,
    2014) ........................................................................................... 30

*Horner v. Ky. High School Athletic Assoc.*,
    43 F.3d 265 (6th Cir. 1994) .......................................................... 22

*HUD v. Baumgardner*,
    HUDALJ 02-89-0306-A, 1990 WL 456960 ................................. 25

*Intermountain Fair Hous. Council v. Boise Rescue Mission Ministries*,
    657 F.3d 988 (9th Cir. 2011) ........................................................ 30

*Keith v. Volpe*,
    858 F.2d 467 (9th Cir. 1988) ........................................................ 28

*Meister v. Kansas City*,
    Case No. 09-2544-EFM, 2011 WL 765887 (D. Kan. 2011) ..... 26, 32

*Melendres v. Arpaio*,
    695 F.3d 990 (9th Cir. 2012) ........................................................ 37

*Pac. Shores Properties, LLC v. City of Newport Beach*,
    730 F.3d 1142 (9th Cir. 2013) ...................................................... 31

*Pfaff v. U.S. Dep't of Hous. & Urban Dev*,
    88 F.3d 739 (9th Cir. 1996) .......................................................... 28

*Texas Dep't of Hous. Cmty. Affairs v. Inclusive Cmtys. Project*,
    135 S. Ct. 939 (2015) .................................................................... 28

*United States v. Lorantffy Care Ctr.*,
    999 F. Supp. 1037 (N.D. Ohio 1998) ....................................... 30, 33

*United States v. Raines,*
  362 U.S. 17 (1960)......................................................................................37

*Winter v. Natural Resources Defense Counsel,*
  555 U.S. 7 (2008).......................................................................................15

**Federal Statutes**

Title VII, 42 U.S.C. § 2000e–1(a) .........................................................30

Title IX, 20 U.S.C. § 1681 ...... 7, 9, 11, 12, 13, 14, 15, 17, 18, 19, 20, 23, 26, 27, 34

20 U.S.C. § 1687....................................................................................23

42 U.S.C. § 3604(a), (b) (2015) .............................................................25

42 U.S.C. § 3607(a) ...............................................................................30

Fair Housing Act...................................... 7, 25, 26, 27, 28, 29, 30, 31, 34

HUD Guidance.........................................................................28, 33, 34

Sara K. Pratt, U.S. Dep't of Hous. & Urban Dev., Office of Fair Hous.
  & Equal Opportunity, Assessing Claims of Housing
  Discrimination Against Victims of Domestic Violence under the
  Fair Housing Act and the Violence Against Women Act (2011)......................27

Violence Against Women Act ...............................................................32

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ████████████ [JANE DOE],<br><br>Plaintiff,<br><br>vs.<br><br>████████████<br>████████ [DOE UNIVERSITY],<br><br>Defendant. | Civil No.<br> 1:15-cv-00085<br>(Other Civil Action)<br><br>**MEMORANDUM IN SUPPORT OF MOTION** |

## MEMORANDUM IN SUPPORT OF MOTION

Plaintiff respectfully and urgently moves this Honorable Court for an entry of immediate relief. On ████████████, Plaintiff was raped by another student. University, in which she is enrolled, investigated the incident and conclusively determined that Plaintiff had been sexually assaulted. Notwithstanding that conclusion, University informed Plaintiff that she must ████████ ████████████████████████████████ ████████████. She was informed of this decision in a letter dated ████████████, ████████████ to secure new housing and arrange a move, ████████████████████████ ████████████. On ████████████, she received another letter from

928938v1

University, conditionally permitting her to remain in ███████████████

███████

      This attempt to evict Plaintiff from ████████████████

███████ is unlawful under Title IX and the Fair Housing Act. Under Title IX, universities that receive federal funds have certain obligations towards victims of sexual abuse who file complaints or report sexual misconduct, including addressing the hostile educational environment and prohibiting retaliation against the victim. The Fair Housing Act prohibits housing discrimination on the basis of sex, such as discrimination against victims of gender-based violence, who live in campus housing. The University's attempt to evict Plaintiff after she reported gender-based violence is prohibited sex discrimination in housing.

      Plaintiff will suffer severe irreparable and immediate harm if the University is permitted to evict her ████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████

      Evicting Plaintiff will put her in immediate danger. ████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████

Furthermore, evicting Plaintiff will cause irreparable harm because it

will result in her ████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████████

███████████████████████████████████████████████████

█████████████████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████████████████

███████████

Moreover, Plaintiff is the victim of repeated violence committed by

her perpetrator.  ████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████

University's attempt to remove Plaintiff from her housing ██████████

████████████████████████████████████████████████

███████████████████████████████ ██████████████████

█████████████████████████ To prevent this immediate, irreparable harm to

Plaintiff, she seeks a temporary restraining order to allow her to remain in her

dormitory ████████████████ while the court weighs the merits of her legal claims

against University for violations of Title IX and the Fair Housing Act.  Plaintiff

specifically asks the Court for an order allowing her to remain in her housing and

█████████████████████ ███████████████████████████████

## I.     STATEMENT OF FACTS

Plaintiff Jane Doe resides in a campus dormitory operated by the

University, ██████████████████████████████████████████████

928938v1



*See* the Declaration of Jane Doe ("Pl.'s Decl.") ¶¶ 2-3.  Plaintiff ▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮

University is a private research university ▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮ Defendant University receives federal funding. ▮▮▮▮▮▮▮

---

[1] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

In ████ 2014, ████████████████

████████████████████████████ Soon

after ████████████ Plaintiff started to experience emotional and mental

abuse perpetrated by him.  *Id.*

This abuse turned physical ████████████

████████████████████████████

████████████████████████████

████████████████████ *Id.*

Plaintiff did not immediately report the rape to her school or the

police.  Pl.'s Decl. at ¶ 8.  ████████████████

████████████████████████████

████████████████████████████

████████████████████████████

---

████████████████████████████
████████████

███████████████████████████████████████████████████

████████████  *Id.*

University started an investigation pursuant to Title IX to determine whether sexual misconduct had ████████████████████████  The investigation involved interviewing Plaintiff, witnesses, and other interested parties.  *Id.*

███████████████████████████████████

█████████████████████████████████████████

██████████████████████████████████████

████████████████████████████████████████████

███

███████████████████████████████████

████████████████████████████████████

██████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████

██████████████████████

███████████████████████████████████████

████████████████████████████████████████████



Plaintiff was humiliated, embarrassed, and felt threatened. *Id.*





## II.   STANDARD OF REVIEW

To obtain a temporary restraining order or a preliminary injunction, a plaintiff must demonstrate that (1) she is likely to succeed on the merits; (2) in the absence of preliminary relief she is likely to suffer irreparable harm; (3) the balance of equities tips in her favor; and (4) an injunction is in the public interest. *Winter v. Natural Resources Defense Counsel*, 555 U.S. 7, 20 (2008).  The Ninth Circuit has "also articulated an alternate formulation of the *Winter* test, under which serious questions going to the merits and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Farris v. Seabrook*, 677 F.3d 858, 864

(9th Cir. 2012) (quoting *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011)) (internal quotation marks omitted).

## III.   ARGUMENT

Plaintiff meets the standard for a temporary restraining order and/or preliminary injunction.  First, Plaintiff can demonstrate a substantial likelihood of success on the merits of her claims under Title IX and the Fair Housing Act ("FHA") because the University's decision to evict her from her housing was based on the sexual assault that she suffered, which constitutes unlawful retaliation against the victim of a sexual assault under Title IX and breaches the University's obligations under the FHA to refrain from sex discrimination in housing, including discrimination against victims of gender-based violence like sexual assault. ▮

Second, Plaintiff will suffer immediate and irreparable harm if she is evicted

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

████████████ Plaintiff is presently dealing with the aftermath of multiple physical and sexual assaults by her perpetrator.  She is struggling with feelings of shame, desperation, and isolation in the wake of these attacks.  Requiring Plaintiff to move out of ███████████████████████ especially so soon after the attacks, will cause her irreparable emotional and mental injury.

Third, the balance of equities tips in Plaintiff's favor because she will suffer the irreparable injuries set forth above, while University will not suffer any harm if she is allowed to stay.  University has no legitimate interest in removing her.

Finally, securing Plaintiff's rights as a sexual assault victim under Title IX and the FHA is in the public interest.  It would be extremely harmful to the public interest if victims of gender-based violence are retaliated against or evicted for reporting the crimes to which they have been subjected.  Such a policy would discourage reporting, leave victims feeling isolated and ashamed, increase

928938v1

victims' vulnerability, and allow perpetrators to more easily escape responsibility for their crimes.

### A. Plaintiff is Likely to Succeed on the Merits.

1.   *Title IX Prohibits Retaliation Against Victims of Sexual Violence.*

Title IX prohibits sex discrimination in any "program or activity receiving Federal financial assistance." 20 U.S.C. § 1681. Congress has made it clear that Title IX applies to colleges and universities "institution-wide" rather than only to individual programs or activities. *See Cureton v. Nat'l Collegiate Athletic Ass'n*, 198 F.3d 107, 115 (3d Cir. 1999). The University is subject to Title IX, a

██████████████████████████████████████

█████████████████████████████████ *See* Ex. 1.

Title IX expressly states that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefit of, or be subjected to discrimination . . ." 20 U.S.C. § 1681(a). It is individually enforceable through an implied right of action, *Cannon v. University of Chicago*, 441 U.S. 677, 709 (1979), and monetary damages are available, *Franklin v. Gwinnett County Pub. Schools*, 503 U.S. 60. 71-73 (1992).

Congress enacted Title IX in 1972 with two principal objectives in mind: "to avoid the use of federal resources to support discriminatory practices" and "to provide individual citizens effective protection against those practices."

928938v1

*Cannon*, 441 U.S. at 704.  Title IX effectively "condition[s] an offer of federal funding on a promise by the recipient not to discriminate." *Gebser v. Lago Vista Indep. School Dist.*, 524 U.S. 274, 286 (1989).  As noted by the U.S. Supreme Court, however, "[t]he number of reported cases involving sexual harassment of students in schools confirms that harassment unfortunately is an all too common aspect of the educational experience." *Id.* at 292.  It is this problem that Title IX, in part, seeks to address.

The law is implemented through the Code of Federal Regulations at 34 C.F.R. Part 106 and guidance issued by the U.S. Department of Education. Specifically, 34 C.F.R. § 106.8(b) (2015) places an obligation on colleges and universities to provide students with "procedures providing for prompt and **equitable resolution** of student . . . complaints alleging any action which would be prohibited by this part."  (Emphasis added).  The U.S. Department of Education also has issued numerous guidance documents to schools regarding the application of Title IX to sexual harassment.  *See, e.g.*, U.S. Dep't of Educ., Office for Civil Rights, *Dear Colleague Letter* (Apr. 4, 2011), http://www2.ed.gov/about/offices/list/ocr/letters/colleague-201104.pdf.

Courts interpreting these provisions have concluded that a university violates Title IX, and is subject to a private damages action, where the recipient is "deliberately indifferent" to known acts of teacher-student or student-student

harassment.  *See Gebser*, 524 U.S. at 277 (regarding teacher-student harassment); *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 633 (1999) (regarding harassment by a fellow student).

*Davis* held that a complainant may prevail in a private Title IX damages action against a school district or educational institution in cases of student-on-student harassment where funding recipients are: "deliberately indifferent to sexual harassment of which they have actual knowledge," and the harassment "is so severe, pervasive, and objectively offensive that it can be said to deprive the victims of access to the educational opportunities or benefits provided by the school."  526 U.S. at 650.

Plaintiff is more than likely to succeed on the merits of her Title IX claim under the standard set forth in *Davis*.  There is no question that University had actual knowledge that Plaintiff was the victim of sexual violence at the hands of a fellow student, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.  *See* Ex. 1▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  It is also beyond dispute that the "harassment" at issue, in this case a rape, is severe and objectively offensive.  Additionally, the University's action in response to its actual knowledge of the harassment is even worse than deliberate indifference; it is direct retaliation.  Despite its knowledge that this egregious incident occurred, University is taking action against Plaintiff, requiring her to move out of her

student housing.  The courts impose liability on universities that are deliberately

indifferent to sexual violence on campus to discourage universities from turning a

blind eye to these types of incidents.  Certainly the same reasoning prohibits

universities from **directly retaliating against** students who file a complaint,

because that response is even worse than turning a blind eye.  The final

consideration from *Davis* is satisfied as well, because University's proposed action

– ███████████████████████████████████ ██████████████████████

██████████████, and evicting her - would unquestionably deprive her of access to

her educational opportunities and benefits provided by the school, *i.e.*, ███████ and

housing on campus.

        Plaintiff predicts that University may argue ████████████████

███████████████████████████████████████████████████████████████

████████████ This argument fails for two reasons. ████████████████████

███████████████████████████████████████████████

██████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████████████

███████████████████████████████████████████████

"Congress has made clear its intent to extend the scope of Title IX's equal opportunity obligations **to the furthest reaches** of an institution's programs." *Horner v. Ky. High School Athletic Assoc.*, 43 F.3d 265, 272 (6th Cir. 1994) (emphasis added).





928938v1



928938v1



In light of the foregoing, Plaintiff has established a sufficient likelihood of success on the merits of her Title IX claim. *See Farris*, 677 F.3d at 864.

    2.    *The Fair Housing Act Prohibits Discrimination on the Basis of Sex, Including Evictions On the Basis of Sexual Violence*

    A.    The Fair Housing Act's prohibition of sex discrimination includes discrimination against survivors of gender-based violence who live in campus housing.

The Fair Housing Act (FHA) makes it unlawful to refuse to rent or to take other actions that make unavailable or deny housing, or to discriminate in the terms of rental, on the basis of race, color, religion, sex, familial status, national origin, or handicap. 42 U.S.C. § 3604(a), (b) (2015).  The FHA's prohibition of discrimination on the basis of sex includes housing practices based on gender stereotyping. *HUD v. Baumgardner*, HUDALJ 02-89-0306-A, 1990 WL 456960,

928938v1

at *4 (U.S. Dep't of Hous. & Urban Dev. Nov. 15, 1990), *aff'd in part and rev'd in part on other grounds*, 960 F.2d 572 (6th Cir. 1992). It also includes policies and practices that have a disparate impact on women. *See, e.g., Budnick v. Town of Carefree*, 518 F.3d 1109, 1114 (9th Cir. 2008) (holding that plaintiff may establish discrimination in violation of the FHA under a theory of disparate treatment or disparate impact).

These protections extend to prohibit housing discrimination against victims of gender-based violence, such as domestic violence and sexual violence. *See, e.g.*, *Dickinson v. Zanesville Metro. Hous. Auth.*, 975 F. Supp. 2d 863, 872, 878 (S.D. Ohio 2013) (denying defendant's motion to dismiss and holding that a domestic violence victim stated a claim of sex discrimination when she alleged that the defendant attempted to evict her on the basis of gender stereotypes that blamed the plaintiff for the violence committed against her); *Meister v. Kansas City*, Case No. 09-2544-EFM, 2011 WL 765887 at *6-7 (D. Kan. 2011) (denying defendant's motion for summary judgment and holding that "evidence that defendant knew that domestic violence caused damage to plaintiff's housing unit would help support a claim that she was evicted under circumstances giving rise to an inference of sex discrimination"); *Bouley v. Young-Sabourin*, 394 F. Supp. 2d 675, 677-78 (D. Vt. 2005) (holding that plaintiff had properly made a claim of sex discrimination in violation of the FHA when she alleged that "defendant attempted to evict her" after

an incident of domestic violence); Determination of Reasonable Cause, *Alvera v. Creekside Village Apartments*, No. 10-99-0538-8 (U.S. Dep't of Hous. & Urban Dev. Apr. 13, 2001) (establishing domestic violence victim's right to bring a sex discrimination claim under the FHA).

The Department of Housing and Urban Development (HUD) has issued guidance interpreting the Fair Housing Act that explains how victims of domestic violence can demonstrate impermissible housing discrimination on the basis of sex.  Sara K. Pratt, U.S. Dep't of Hous. & Urban Dev., Office of Fair Hous. & Equal Opportunity, Assessing Claims of Housing Discrimination Against Victims of Domestic Violence under the Fair Housing Act and the Violence Against Women Act (2011) (hereinafter "HUD Guidance").  First, disparate treatment on the basis of sex may be demonstrated where actions or policies are based on gender stereotypes about abused women, such as holding them responsible for the violence committed against them.  *Id.* at 4.  An FHA violation can also arise where a defendant engages in unequal treatment of victims of domestic violence in comparison to victims of other crimes.  *Id.* at 4-5.  Lastly, because "statistics show that discrimination against victims of domestic violence is almost always discrimination against women," a disparate impact analysis is appropriate when a facially neutral housing policy disproportionately affects such

victims. *Id.* at 2, 5.[4]  While the HUD Guidance discusses claims available to

victims of domestic violence, the same analysis is applicable to allegations of

housing discrimination against victims of sexual violence where the discrimination

is based on gendered stereotypes, results in disparate treatment of women

compared to men, and has a disparate impact on women.  Indeed, under the FHA,

like under Title IX, sexual harassment is recognized as a form of sex

discrimination.  *See, e.g., Hall v. Meadowood Ltd. P'ship*, 7 F. Appx. 687 (9th Cir.

2001); *Beliveau v. Caras*, 873 F. Supp. 1393, 1398 (C.D. Cal. 1995).

By notifying Plaintiff that she is ████████████████████

████████████████████████████████████████

████████████ Defendant has refused to rent and otherwise made

unavailable or denied a dwelling to Plaintiff as prohibited by the FHA.  *See Harris*

*v. Itzhaki*, 183 F.3d 1043, 1052 (9th Cir. 1999) (provision of eviction notices on

discriminatory grounds gives rise to liability under the FHA); *United States v.*

---

[4] The U.S. Supreme Court is currently reviewing the issue of whether disparate impact claims can be brought under the Fair Housing Act. *Texas Dep't of Hous. Cmty. Affairs v. Inclusive Cmtys. Project*, 135 S. Ct. 939 (2015), *motion granted*, No. 13-1371 (S. Ct. Jan. 9, 2015).  Currently, all courts of appeals, including the 9th Circuit, and HUD agree that such claims can be filed.  *Pfaff v. U.S. Dep't of Hous. & Urban Dev*, 88 F.3d 739, 745-46 (9th Cir. 1996); *Keith v. Volpe*, 858 F.2d 467, 482-84 (9th Cir. 1988); Implementation of the Fair Housing Act's Discriminatory Effects Standard, 78 Fed. Reg. 11,460, 11,461 & nn.12–16 (Feb. 15, 2013) (codified at 24 C.F.R. pt. 100).

*Univ. of Neb. at Kearney*, 940 F. Supp. 2d 974, 977-83 (D. Neb. 2013) (holding that defendant's student housing facilities are covered by the Fair Housing Act's definition of "dwelling"); 24 C.F.R. § 100.201 (2015) (HUD regulations defining dwelling unit for the purposes of disability discrimination as "dwellings in which sleeping accommodations are provided but toileting or cooking facilities are shared by occupants of more than one room or portion of the dwelling. . . Examples of [which] include dormitory rooms and sleeping accommodations in shelters intended for occupancy as a residence for homeless persons"); 24 C.F.R. § 100.60(b) (2015) (unlawful refusal to rent includes evicting tenants because of their sex).  Defendant's decision necessarily requires that Plaintiff vacate her campus housing and thus makes it unavailable to her.

   B.   ███████████████████████████████████
█████████████████████████████████████
██████████████████████████████

███████████████████████████████

████████████████████████████████████

███████████████████████████████████████

████████████████████████████████████

█████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████



928938v1



### C. Defendant discriminated against plaintiff in violation of the Fair Housing Act by evicting her based on sexual violence.

A plaintiff claiming discrimination pursuant to § 3604 may prevail by showing either that the defendant's challenged conduct is intentionally discriminatory or has a disproportionate impact on members of a protected group. *Budnick*, 518 F.3d at 1114. In this case, there is strong evidence of both intentional discrimination on the basis of sex and a significant disparate effect on women.

To support a claim of disparate treatment under the FHA, a plaintiff must show proof of "intentional acts by defendants done with a discriminatory purpose." *Dickinson*, 975 F. Supp.2d at 870-871 (S.D. Ohio 2013) (citing *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 335 n.15 (1977); *Pac. Shores Properties, LLC v. City of Newport Beach*, 730 F.3d 1142, 1158 (9th Cir. 2013) *cert. denied sub nom. City of Newport Beach, Cal. v. Pac. Shores Properties, LLC*, 135 S. Ct. 436(2014). Discriminatory purpose or intent can be shown through "either direct or circumstantial evidence demonstrating that a discriminatory reason more likely than not motivated the challenged decision." *Budnick*, 518 F. 3d at

928938v1

26

1114.  In this case, Plaintiff has ample evidence that Defendant intentionally discriminated against her and the disproportionate harm to women that results from Defendant's practice of removing students that report sexual assault.

████████████████████████████████

████████████████████████████████

████████████████████████████ *See*

*Bouley*, 394 F.Supp.2d at 678 (a landlord's attempt to evict plaintiff 72 hours after domestic dispute could give rise to inference of sex discrimination); *Meister,* 2011 WL 765887, at *6 ("evidence that defendant knew that domestic violence caused. . . [the alleged breach of lease] would help support a claim that [the plaintiff] was evicted under circumstances giving rise to an inference of sex discrimination."). Additionally, University was aware or should have been aware that punishing Plaintiff on the basis of her status as a victim of sexual assault violated its obligations under Title IX.  This dereliction of its legal obligations to sexual assault victims supports the conclusion that University acted with intent to discriminate against such victims.  *See Dickinson*, 975 F.Supp.2d at 872 ("dereliction of its obligations under the Violence Against Women Act and apportionment of blame for the results of the domestic violence could give rise to an inference that ZMHA acted with intent to discriminate on the basis of gender") (citations removed).

928938v1

In addition, Plaintiff can support a claim of intentional discrimination by showing that a neutral policy nevertheless results in unequal treatment of individuals with a protected characteristic.  *Gamble v. City of Escondido*, 104 F.3d 300, 305 (9th Cir. 1997); *Budnick,* 518 F.3d at 1114.  Here, Defendant treated a victim of sexual assault, the majority of whom are women, differently than a victim of other crimes.  HUD Guidance, at 4 (asserting that unequal treatment may be demonstrated where a housing provider engages in unequal treatment of victims of domestic violence in comparison to victims of other crimes).  Defendant removed Plaintiff from campus after she reported and was found to be a victim of gender-based violence, unlike students who report or are victims of other crimes.

University has not put forward any nondiscriminatory reason for the disparate treatment described above.  *See Gamble*, 104 F.3d at 305 (once a "plaintiff establishes the prima facie case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its action").  University's sole justification has been that its decision ████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████ Moreover,

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████ Its

action qualifies as housing discrimination under the FHA.

Defendant's practice of removing victims of sexual violence from campus also has a disparate impact on women. In this circuit, the following elements are sufficient to make out a prima facie case under a disparate impact theory "(1) the occurrence of certain outwardly neutral practices, and (2) a significantly adverse or disproportionate impact on persons of a particular type produced by the defendant's facially neutral acts or practices." *Gamble,* 104 F.3d at 306 (citing *Pfaff v. U.S. Dep't of Hous. and Urban Dev.*, 88 F. 3d 739, 745 (9th Cir. 1996). When a neutral practice targets victims of gender-based violence, it raises disparate impact concerns under the Fair Housing Act because of the disproportionate harm to women. *See, e.g.*, Determination of Reasonable Cause at 4, 6, *Alvera v. Creekside Village Apartments*, No. 10-99-0538-8 (U.S. Dep't of Hous. & Urban Dev. Apr. 13, 2001); HUD Guidance, at 5.

Here, Defendant removed a student from campus housing after she reported and was found to be a victim of sexual violence. This practice, while not

928938v1

29

explicitly making any distinction on the basis of sex, has an inherently

disproportionate impact on women because women make up the vast majority of

rape or sexual assault victims.[5]  Defendant lacks any legitimate justification for this

practice that could outweigh its discriminatory effect. *Budnick*, 518 F.3d at 1118

(once a plaintiff establishes a prima facie case, a defendant may rebut this by

supplying a legally sufficient, nondiscriminatory reason).  While Defendant may

argue that this practice ███████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████████████████  The

overwhelming impact that Defendant's practice has on women strongly supports a

finding that it is discriminatory under the FHA.

### B. Absent an Order from this Court, Plaintiff Will Suffer Irreparable Harm.

Absent an order from this Court, Plaintiff will be required to secure

housing off campus and move out of her dormitory ███████████ ███████

██████████████████████ *See* Ex. 1.  This will cause immediate and

---

[5] Jennifer L. Truman, U.S. Dep't of Justice, Bureau of Justice Statistics, *Nat'l Crime Victimization Survey, Criminal Victimization, 2010* 9 (2011), *available at* http://www.bjs.gov/content/pub/pdf/cv10.pdf (finding that women experienced over 169,000 rapes and sexual assaults, compared to approximately 15,000 experienced by men).

irreparable harm. █████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

█████████████████████████████. Moreover, Plaintiff will

suffer irreparable harm if she is not able ████████████████

█████████████████████████

Furthermore, █████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████. *Id.*

Finally, being evicted from her dormitory will further traumatize

Plaintiff, as she is presently dealing with the aftermath of multiple physical and

sexual assaults by her perpetrator.  Pl.'s Decl. ¶¶ 21-23.  She has struggled with

feelings of shame, desperation, and isolation in the wake of these attacks.  *See Id.*

Requiring Plaintiff to move out of ██████████████████████, especially so

soon after the attacks perpetrated against her, is cruel and will cause her irreparable emotional and mental injury.

## C. The Balance of Equities Tips Sharply in Plaintiff's Favor.

University will suffer no discernible harm by the issuance of an injunction, and the balance of equities tips decidedly in favor of preliminary relief. *See, e.g., Arizona Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1069 (9th Cir. 2014) ("the balance of the equities favor[s] preventing the violation of a party's federal rights) (citation and internal quotation marks omitted).  While Plaintiff will suffer immediate and irreparable harm if she is required ████████████████ leave the safety of her campus ███████████████████████ University will not suffer any legitimate harm if she stays.  ██████████████████ ████████████████████████████████████████████████ ████████████  Pl.'s Decl. ¶ 24.  There is no change in circumstances that have changed the feasibility of that option, aside from their unlawful decision to evict her.  As such, the balance of equities tips sharply in Plaintiff's favor.

## D. A Preliminary Injunction Is In The Public Interest.

Securing civil rights is clearly in the public interest.  Courts have consistently recognized the significant public interest in protecting fundamental rights.  *See United States v. Raines*, 362 U.S. 17, 27 (1960) ("[T]here is the highest public interest in the due observance of all constitutional guarantees"); *Melendres*

*v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) ("[I]t is always in the public interest to prevent the violation of a party's constitutional rights") (citation and internal quotation marks omitted)).

Furthermore, it is in the public interest to preserve and protect the rights of survivors of sexual assault.  As set forth above, the law prohibits retaliation against victims like Plaintiff for a reason – because retaliation stifles victims' desire and ability to safely report sexual violence.  It is clearly in the public interest to protect the rights of survivors of sexual assault, not only for their own protection, but also to ensure that other victims feel are able to come forward without penalty.  If sexual assault victims' ability to report is compromised, it will only exacerbate the problem of sexual violence, especially at colleges and universities, and reduce the number of victims who are willing to come forward.  That sort of reduction will not only lead to further isolation of victims, but will allow perpetrators to escape responsibility for their crimes.

In sum, a temporary restraining order or preliminary injunction will protect Plaintiff from a violation of her civil rights and will serve to protect the rights of the public more generally.  Issuance of an injunction to preserve the status quo – allowing Plaintiff to remain in her dormitory and ███████████  ███████████ is unquestionably in the public interest.

## IV. CONCLUSION

Plaintiff respectfully requests that this Court issue a temporary restraining order and/or preliminary injunction prohibiting University from evicting her or ███████████████████████████ ████████ Specifically, Plaintiff requests an order that will allow her to remain in her current housing and ████████████████████████████████████████████████████ ████████. Plaintiff satisfies all four elements required for this type of relief. She is likely to succeed on the merits of both of her substantive claims under Title IX and the Fair Housing Act, which prohibit retaliation against a victim of sexual violence and impose obligations upon colleges and universities to provide safe housing to such victims. University has clearly breached these legal obligations because it has moved to evict the victim of a sexual assault and deprive her of equal educational access as the direct result of the fact that she was sexually assaulted.

Plaintiff will suffer irreparable harm if she is required to move ████ ███████████████████████████████████ ████████████████████████████████████ ████████████████████████████████████ █████████████████████████████████████ at a time when her mental and emotional state is incredibly vulnerable. ███████████

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]. Accordingly, she comes to the Court seeking an order that will preserve her status quo [REDACTED]

Finally, both the balance of equities and the public interest weigh in favor of issuing a temporary restraining order.  University will not suffer any adverse consequences from allowing Plaintiff to remain on campus; indeed, prior to its finding that Plaintiff was sexually assaulted, [REDACTED]

[REDACTED] Public policy weighs heavily in favor of securing the civil rights of victims of sexual assault.  To allow University to evict Plaintiff and retaliate against her for being the victim of sexual assault would only serve to chill future victims' desire and ability to safely report sexual violence on college campuses.  If reporting these occurrences subjects sexual assault victims to punishment, there will be fewer reports. This consequence is clearly against the public interest in maintaining safe college campuses.  Plaintiff respectfully requests that this Motion be granted.

928938v1

DATED: Honolulu, Hawai\`i, March 18, 2015.

/s/ Morgan Early
J. BLAINE ROGERS
MORGAN EARLY
ALSTON HUNT FLOYD & ING

DANIEL M. GLUCK
LOIS K. PERRIN
ACLU OF HAWAII FOUNDATION

SANDRA S. PARK*
MICHAELA WALLIN*
LENORA M. LAPIDUS*
ACLU WOMEN'S RIGHTS PROJECT

BRIAN HAUSS*
ACLU CENTER FOR LIBERTY

* Motions for Admission *Pro Hac Vice*
   Forthcoming

Attorneys for Plaintiff
JANE DOE

## CERTIFICATE OF WORD COUNT

Pursuant to Local Rule 7.5(b), I hereby certify that Plaintiff Jane Doe's Motion for Temporary Restraining Order or, in the Alternative, for Preliminary Injunction was typed on Microsoft Word using 14-point, Times New Roman font and contains 8,083_ words, exclusive of case caption, table of contents, table of authorities, certificates of counsel, and certificate of service.

DATED: Honolulu, Hawai`i, March 18, 2015.

　　　　　　　　　　　　*/s/ Morgan Early*
　　　　　　　　　　　　J. BLAINE ROGERS
　　　　　　　　　　　　MORGAN EARLY
　　　　　　　　　　　　ALSTON HUNT FLOYD & ING

　　　　　　　　　　　　DANIEL M. GLUCK
　　　　　　　　　　　　LOIS K. PERRIN
　　　　　　　　　　　　ACLU OF HAWAII FOUNDATION

　　　　　　　　　　　　SANDRA S. PARK*
　　　　　　　　　　　　MICHAELA WALLIN*
　　　　　　　　　　　　LENORA M. LAPIDUS*
　　　　　　　　　　　　ACLU WOMEN'S RIGHTS PROJECT

　　　　　　　　　　　　BRIAN HAUSS*
　　　　　　　　　　　　ACLU CENTER FOR LIBERTY

　　　　　　　　　　　　* Motions for Admission *Pro Hac Vice*
　　　　　　　　　　　　　　Forthcoming

　　　　　　　　　　　　Attorneys for Plaintiff
　　　　　　　　　　　　JANE DOE